UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MORICE ERVIN,                          )
                                       )
            Petitioner,                )
                                       )
      v.                               )    No. 2:24-cv-00402-JPH-MG
                                       )
WARDEN,                                )
                                       )
            Respondent.                )

## ORDER GRANTING MOTION TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS

In his petition for writ of habeas corpus, petitioner Morice Ervin challenges his 2015 Marion County, Indiana, convictions for rape and murder. The respondent's motion to dismiss argues that the petition must be denied because it is time-barred and all but one of his claims are procedurally defaulted. Dkt. 8. For the reasons explained below, Mr. Ervin's petition for a writ of habeas corpus is **denied**, and the action is **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

### I.  Background

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

1

On March 27, 2014, Shannon Kleeman ("Shannon") spent the night at her step-mother Jenny Kleeman's ("Jenny") Marion County house to care for Jenny's pets while Jenny was hospitalized. Jenny called to check on Shannon that evening, and Shannon told Jenny that Morice Ervin had stopped by. Ervin and his wife Mary Ervin lived next door to Jenny, and Jenny socialized with them regularly. Jenny owned her late husband's Mossberg twelve-gauge shotgun and previously asked Ervin to load it for her so it was available for her protection. Ervin thus knew where Jenny kept the gun. Ervin was also familiar with Jenny's dogs. Ervin had met Shannon, who visited Jenny daily, and Jenny had told Ervin that Shannon was "special, that she didn't have the mentality of the 21–year–old that she looked like."

On March 28, 2014, Crystal Combs, the sister with whom Shannon lived, went to Jenny's house to check on Shannon because she had been unable to reach her by telephone. When Combs arrived, the front door to Jenny's house was unlocked, and Combs discovered Shannon's half-naked body lying in a pool of blood in Jenny's basement.

Shannon had been shot in the head at close range with a twelve-gauge shotgun resulting in massive trauma. In order to better assess the injuries to Shannon's face and head, the forensic pathologist used surgical yarn "and sewed her face back together to better approximate and document the injuries...." He observed "an area of shotgun injury to the right and left eyes, there's fractured teeth, there's some birdshot, entry shotgun injury [ ] to the left cheek, her back of her skull was markedly fragmented into multiple skull fractures." She had bird shot pellets embedded in her right hand. Shannon's right thumb was almost completely amputated by a gunshot wound. One of her breasts was bruised. There were scrapes and bruises on her neck that indicated her neck was compressed, but the forensic pathologist was unable to determine if she was strangled because the trauma to Shannon's eyes was so severe he could not assess them for petechial hemorrhages. Shannon's shirt was torn, and her pants and underwear had been removed. She suffered tears to her vagina and anus that the forensic pathologist testified would have been "extremely painful[.]"

Swabs taken from one of Shannon's breasts and under the fingernails on her left hand revealed the presence of Ervin's DNA. Ervin's DNA was also found on swabs from Shannon's vagina. Jenny's shotgun was missing from her home at the time Shannon's body was discovered; it was never found.

2

> The State charged Ervin with murder, Class A felony rape, and with an habitual offender enhancement. A jury found him guilty as charged, and the trial court sentenced Ervin to an aggregate sentence of 135 years in the Department of Correction.

*Ervin v. State*, 59 N.E.3d 1104, 2016 WL 3961262, *1 (Ind. Ct. App. 2016) (memorandum decision) (in the record at dkt. 8-5).

On direct appeal, Mr. Ervin argued that the trial court erred in admitting photographs of the crime scene and autopsy. Dkt. 8-3 at 1, 4. The Indiana Court of Appeals affirmed the convictions on July 22, 2016, and the Indiana Supreme Court denied transfer on October 6. Dkt. 8-2 at 4–5.

On February 15, 2017, Mr. Ervin filed a petition for post-conviction relief. Dkts. 8-8 and 8–9. On January 4, 2022, the post-conviction court denied Mr. Ervin's petition. Dkt. 8-10. Mr. Ervin did not file a notice of appeal within 30 days of that decision. *See* Ind. App. R. 9(A)(1).

Mr. Ervin filed a motion for leave to file a belated motion to correct error on August 10, 2022, and argued that he had not received notice that his petition had been denied. Dkt. 8-22. The post-conviction court denied his motion on August 25, 2022, and on September 7, Mr. Ervin filed a second motion seeking leave to file a belated motion to correct error. Dkt. 8-8 at 10; dkt. 8-13 at 1. The second motion was deemed denied on September 11. Dkt. 8-8 at 10; dkt. 8-13 at 1–2.

Mr. Ervin filed a notice of appeal on September 28, 2022, and on March 22, 2023, the state moved to dismiss the appeal based on its untimeliness. Dkt. 8-11 at 2; dkt 8-12. The state argued in its motion that Mr. Ervin had failed to show "extraordinarily compelling reasons" for the Indiana Court of Appeals to

forgive the untimely filing of his notice of appeal. Dkt. 8-13 at 3 (citing *In re Adoption of O.R.,* 16 N.E.3d 965, 971 (Ind. 2014)). The Indiana Court of Appeals granted the state's motion on April 24, 2023. Dkt. 8-15. Mr. Ervin filed a petition for rehearing on June 14, 2023, which was denied on June 29. Dkt. 8-16; dkt. 8-17.

On November 14, 2023—nearly seven months after the Court of Appeals denied the petition for rehearing—Mr. Ervin filed a belated petition to transfer, citing his difficulty accessing the law library at Wabash Valley Correctional Facility. Dkt. 8-18. The Indiana Supreme Court denied his request on November 28, concluding, "Because Appellant has not shown the untimeliness was outside of his control, this is not the type of extraordinary circumstance in which the Court might otherwise consider deviating from our unambiguous rules." Dkt. 8-19.

On August 7, 2024, 253 days after the Indiana Supreme Court denied his final effort to pursue a belated appeal, Mr. Ervin signed and mailed his federal habeas corpus petition to this Court. Dkt. 1.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). "[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 14 (1992) (O'Connor, J.,

4

dissenting) (internal citations omitted). One of those hurdles is the statute of limitations.

In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law," Congress revised several statutes governing federal habeas relief as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Williams v. Taylor*, 529 U.S. 362, 404 (2000). 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A petitioner may be entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). A petitioner may also avoid dismissal under § 2244(d) by showing actual innocence based on new evidence that was not presented at trial. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016).

### III. Discussion

Mr. Ervin's conviction and sentence became final on January 4, 2017, which was 90 days after the Indiana Supreme Court denied transfer of his direct appeal. *See* S. Ct. R. 13(1) (providing 90 days after entry of judgment to seek certiorari to the United States Supreme Court); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Therefore, the one-year period of limitation began running on January 5, 2017, and continued to run until February 15, 2017, when Mr. Ervin filed a petition for post-conviction review in state court. 28 U.S.C. § 2244(d)(2) (tolling the limitations period during pendency of a "properly filed application for State post-conviction or other collateral review"). The limitations period remained tolled until the post-conviction court denied Mr. Ervin's petition on January 4, 2022. Dkt. 8-10.

The limitations period did not toll during the 30 days in which Mr. Ervin could have filed a timely notice of appeal but did not; nor did it toll while he tried but failed to file his untimely appeal. 28 U.S.C. § 2244(d)(2) (the statute of limitations is tolled only when "a properly filed application for State post-conviction . . . review . . . is pending."). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules

governing filings," such as "the time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see also Freeman v. Page*, 208 F.3d 572, 576 (7th Cir. 2000) ("Whether a collateral attack is 'properly filed' can be determined in a straightforward way by looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws such as untimeliness, then it was not properly filed."). The Indiana Court of Appeals dismissed Mr. Ervin's appeal as late, and Mr. Ervin missed the deadline by which to file his transfer petition to the Indiana Supreme Court. Dkt. 8-15; dkt. 8-19; *see* Ind. App. R. 57(C)(2). As a result, Mr. Ervin's application for state post-conviction review was not properly before any state court after January 4, 2022. *Artuz*, 531 U.S. at 8.

In total, 987 days elapsed between Mr. Ervin's conviction becoming final and the filing of his collateral attack in federal court:

| | | |
|---|---|---|
| Conviction Final | January 5, 2017 | 365 days left in limitation period |
| State Post-Conviction Filed | February 15, 2017 | 324 days left in limitation period |
| Post-conviction Petition Denied | January 4, 2022 | 324 days left in limitation period |
| Federal Habeas Petition Due | November 24, 2022 | 0 days left in limitation period |
| Federal Habeas Petition Mailed | August 7, 2024 | 622 days beyond limitation period |

Under 28 U.S.C. § 2244(d), Mr. Ervin had until November 24, 2022, to file a petition for writ of habeas corpus. However, he did not file this petition until August 7, 2024, 622 days after the limitations period expired.

7

The parties agree that Mr. Ervin did not file his habeas petition within the one-year statute of limitations, but Mr. Ervin argues that he is entitled to equitable tolling and that he is actually innocent.

## A. Equitable Tolling

Mr. Ervin argues that the statute of limitations should be equitably tolled for several reasons. First, Mr. Ervin argues that he did not receive notice of the January 4, 2022, order denying his petition for post-conviction relief until August 29, 2022. Dkt. 1 at 19. Second, he argues that he suffers from a tumor on his right temple that "causes him to struggle to keep a thought." Dkt. 9 at 4. Last, Mr. Ervin argues that he suffered from restricted law library access during the COVID-19 pandemic. *Id.* As the petitioner, Mr. Ervin bears the burden to demonstrate equitable tolling is warranted. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

### i.    Lack of Notice

Mr. Ervin argues that he was diligent in pursuing relief because once he learned about the denial of his post-conviction relief petition, he tried to keep his state post-conviction moving forward by filing his belated motion to correct error, notice of appeal, and other filings. Dkt. 9 at 3.

The diligence required for equitable tolling is "reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (cleaned up). However, "mere conclusory allegations of diligence are insufficient and reasonable effort throughout the limitations period is required." *Mayberry v. Dittman*, 904 F.3d 525, 531 (7th Cir. 2018). "[I]t is established that prisoners' shortcomings of

8

knowledge about the AEDPA or the law of criminal procedure in general do not support tolling." *Davis v. Humphreys*, 747 F.3d 497, 500 (7th Cir. 2014).

Here, the Court assumes without deciding that Mr. Ervin was diligent in trying to resurrect his post-conviction proceedings in state court when he filed his motions to correct errors in the trial court and his subsequent notice of appeal after the trial court denied his motions to correct error. But that is not the end of the diligence inquiry. Diligence requires "reasonable effort throughout the limitations period." *Mayberry*, 904 F.3d at 531.

Mr. Ervin waited nearly seven more months after the Court of Appeals denied his petition for rehearing to file a belated petition to transfer in the Indiana Supreme Court. Dkts. 8-17, 8-18. After the Indiana Supreme Court denied his motion, he waited another 253 days before filing his habeas petition in this Court. Mr. Ervin does not argue that a lack of notice can show diligence during those periods. *See* dkt. 9. Thus, the Court finds that he did not demonstrate diligence. *See Taylor v. Michael*, 724 F.3d 806, 811 (7th Cir. 2013) (reasoning that a petitioner's failure to pursue his rights for months at a time weighed against equitable tolling).

### ii.    Brain tumor

Mr. Ervin also asserts that his mental limitations caused by a tumor on his right temple amount to extraordinary circumstances that require equitable tolling. Dkt. 9 at 4. Specifically, Mr. Ervin argues that the tumor "causes him to struggle to keep a thought" and results in confusion and short-term memory problems. *Id.*

9

A petitioner's "mental limitations can support equitable tolling." *Perry v. Brown,* 950 F.3d 410, 412 (7th Cir. 2020). A petitioner must show that his intellectual disabilities "actually impaired his ability to pursue his claims." *Obriecht v. Foster,* 727 F.3d 744, 750–51 (7th Cir. 2013). Conclusory statements of intellectual disability are not sufficient. *Id.* at 751.

The only evidence Mr. Ervin submits related to his tumor is an excerpt of a deposition in an unrelated matter, in which he testified that he saw a nurse about the tumor because it caused headaches, but the nurse had not yet referred him to a doctor. Dkt. 9-1 at 8–9; *see also* dkt. 11 at 2–3 (Mr. Ervin asserting that he has had the growth since 2014 and has sought treatment for it throughout his incarceration, but medical staff have only measured the growth on two occasions). Mr. Ervin's self-reported symptoms are insufficient to show that he was in fact prevented from timely pursuing habeas relief. *Cf. Perry,* 950 F.3d at 412 (concluding that district court erred by not having evidentiary hearing to determine if petitioner's aphasia—which affected his ability to understand any words—prevented him from timely filing habeas petition). Notably, Mr. Ervin actively pursued post-conviction relief in state court without the assistance of counsel while he had this tumor. *See, e.g.* dkt. 8-9 (pro se post-conviction petition, filed February 15, 2017); dkt. 8-14 (pro se response in opposition to motion to dismiss PCR appeal, filed April 6, 2023). His coherent filings do not show that the tumor affects his ability to understand legal proceedings. *See also* dkt. 1 at 8–17 (pro se habeas petition, mailed August 7, 2024, discussing claims

10

in detail). The Court concludes that this health issue did not in fact prevent Mr. Ervin from filing a petition on time.

The Court further finds that an evidentiary hearing is not necessary to determine the impact of Mr. Ervin's "tumor" on his ability to pursue habeas relief. *See Boulb v. United States*, 818 F.3d 334, 340 (7th Cir. 2016) (petitioner's allegations that he was "functionally illiterate" and "intellectually disabled" too "conclusory and insufficient to justify an evidentiary hearing"); *Mayberry*, 904 F.3d at 530–32 (petitioner's previous finding of incompetence in his criminal trial, evidence of a low IQ, and classification of "serious mental illness" were too vague to warrant an evidentiary hearing).

### iii.    COVID-19 lockdown

Mr. Ervin also contends that he is entitled to equitable tolling because his access to the law library was restricted due to the COVID-19 pandemic while he "was going through the post-conviction process," which caused delays in the state court issuing a decision on his case. Dkt. 9 at 4. Mr. Ervin does not describe the relevant timeframe in his response, but he filed his state post-conviction petition on February 15, 2017[1]; his post-conviction evidentiary hearing was bifurcated and held on April 13, 2021, and July 6, 2021; and his petition was denied on January 4, 2022. Dkt. 8-8 at 1, 8–9. The case summary does not expressly attribute any delays to the pandemic specifically, and it appears that Mr. Ervin's hearing was held during COVID-related lockdowns.

---

[1] According to the case summary, Mr. Ervin filed his petition on February 15, 2017, but it was not opened as a new case by the Marion Superior Court 27 until July 9, 2019. Dkt. 8-8 at 1.

11

Usually, a "prisoner's limited access to the prison law library is not grounds for equitable tolling." *Ademiju v. United States*, 999 F.3d 474, 478 (7th Cir. 2021) (quoting *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008)). An evidentiary hearing on access to the law library may be necessary "when a petitioner alleges facts that, if true, would entitle him to relief." *Lairy v. United States*, 142 F.4th 907, 917 (7th Cir. 2025) (reversing and remanding for an evidentiary hearing under 28 U.S.C. § 2255(b)). Here, as explained above, the statute of limitations was tolled while Mr. Ervin was pursuing post-conviction relief between February 15, 2017, and January 4, 2022. Dkt. 8-10; *see* 28 U.S.C. § 2244(d)(2) (tolling the statute of limitations during state post-conviction proceedings). That time therefore cannot excuse Mr. Ervin's late filing in this Court because it was already tolled. And Mr. Ervin does not allege or present evidence that the pandemic presented law-library access issues after January 2022. *See* dkt. 9 at 4.

Because Mr. Ervin has not shown diligence or "that some extraordinary circumstance stood in his way and prevented timely filing," he is not entitled to equitable tolling. *See Lairy*, 142 F.4th at 917.

**B. Actual Innocence**

Mr. Ervin further argues that he is innocent of the charges for which he was convicted. Dkt. 9 at 4. "[A] prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013). This includes the "expiration of the statute of limitations." *Id.* at 386. A viable actual

innocence claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024) ("New evidence in this context is not 'newly discovered evidence,' but rather any evidence that was not presented at trial.") (quoting *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016). Based on new evidence and the rest of the available record, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. Thus, "tenable actual-innocence gateway pleas are rare[.]" *McQuiggin*, 569 U.S. at 386.

Here, Mr. Ervin has not identified any new reliable evidence in support of his actual innocence claim. Instead, Mr. Ervin rehashes the evidence presented at trial and argues jury confusion, witness credibility, and the weight and sufficiency of the evidence against him. Dkt. 9 at 4-5 (discussing medical doctor's testimony on the issue of consent, the jury requesting if it could convict on a lesser charge of rape, and DNA evidence presented at trial).

The only reference to evidence not presented at trial is Mr. Ervin's statement that his trial counsel "could [have] use[d] Mrs. Ervin as an alibi witness, but chose not to, showing prejudice against petitioner." Dkt. 9 at 5 (internal citations to trial record omitted). That vague statement, unsupported by admissible evidence such as an affidavit, is not enough to show "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Dixon*,

13

93 F.4th at 403. "As this court described it, . . . a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'" *Id.* (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)). Without new reliable evidence, Mr. Ervin's claim of actual innocence cannot excuse his untimely petition. *Schlup*, 513 U.S. at 324.

Because Mr. Ervin has not made a showing of actual innocence, this argument does not provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error. Therefore, his petition must be **dismissed** as barred by the statute of limitations.

## C. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Instead, the petitioner must first obtain a certificate of appealability, which will issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(1), (c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." It is undisputed that Mr. Ervin's petition was untimely. No reasonable jurist could conclude that Mr. Ervin was entitled to equitable tolling or made a convincing showing of an actual innocence claim, so a certificate of appealability is denied. *See Pineda-Hernandez v. United States*, Case No. 1:22-cv-01765-JMS-TAB, 2024 WL 1769297, *3 (S.D. Ind. Apr. 24, 2024) (denying certificate of appealability related to § 2255 motion where petitioner argued he was entitled to equitable tolling due to the COVID-19 pandemic); *McCullough v. Warden Wabash Valley Correctional Facility*, Case No. 2:18-cv-00256-JRS-DLP, 2019 WL 2411352, *3 (S.D. Ind. June 7, 2019) (denying certificate of appealability where despite petitioner's diagnosed schizophrenia and borderline IQ, petitioner had filed a successive petition for post-conviction relief in Indiana before expiration of limitation period); *Posey v. Sevier*, Case No. 1:19-cv-03763-JMS-TAB, 2020 WL 4705193, *3 (S.D. Ind. Aug. 13, 2020) (denying certificate of appealability on actual innocence claim where most of petitioner's "new evidence" had been presented at trial).

## IV. Other Pending Motions

Mr. Ervin's motion for an evidentiary hearing to expand the record regarding claims of ineffective assistance of trial counsel, dkt. [12], is **denied**. Generally, the merits of claims raised in a federal habeas corpus petition are decided on the record that was before the state court when it adjudicated a claim. *See Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). AEDPA restricts a federal habeas court's authorization to hold an evidentiary hearing or consider

evidence where an applicant failed to develop the factual basis for a claim in state court proceedings unless the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence, or the facts underlying the claim would show that no reasonable factfinder would find the defendant guilty. 28 U.S.C. § 2254(e)(2)(A)-(B).

Mr. Ervin has not met this burden. Rather, he simply seeks to have an evidentiary hearing where he can present evidence related to his previously litigated ineffective assistance of counsel claim. Because Mr. Ervin's petition is time-barred, the Court does not reach the merits of his ineffective assistance of counsel claims. Regardless, he has not shown he qualified for a hearing under 28 U.S.C. § 2254(e)(2). The motion, dkt. [12], is **denied**.

Mr. Ervin also filed a motion "for a copy of the opinion and annotes of the review panel that was decided on March 18, 2024" by the U.S. Supreme Court. Dkt. 15. He does not provide a case name, and, regardless, this Court does not furnish copies of legal opinions to litigants. Thus, the motion for copies, dkt. [15], is **denied**.

Finally, Mr. Ervin has filed a motion "to convert the un-publish opinion to publish opinion" so that he may use it in pursuing a successive petition for post-conviction relief in state court. Dkt. 16. This motion, dkt. [16], is **denied** because no decision has been issued in this matter until now. To the extent that Mr. Ervin wants the memorandum opinion of his direct appeal to be published, he must make that request in the Indiana Court of Appeals.

16

## V. Conclusion

Respondent's motion to dismiss Mr. Ervin's petition, dkt. [8], is **granted**. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **dismissed with prejudice** and a certificate of appealability shall not issue.

Mr. Ervin's motion for an evidentiary hearing, dkt. [12], motion for copies, dkt. [15], and motion to publish opinion, dkt. [16], are **denied**.

Judgment consistent with this Order shall now issue.

**SO ORDERED**.

Date: 3/31/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MORICE ERVIN
110724
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All Electronically Registered Counsel